Yes, Your Honor. Here are Eleora's hands for the appellant. All right. Thank you. And I would like to divide the time. I understand I have 15 minutes? That's correct. I would like to divide 10 minutes and then 5 minutes reserved for rebuttal. Okay. The clock is starting to tick and you have 15 to start and we'll keep track of your time. Thank you very much. Honorable Judges of the Ninth Circuit, what we have here is a situation in which the shipper, Starrag, has been misled into believing that COGSA, the Carriage of Goods by Sea Act, enacted by Congress, applied as enacted by Congress, that is, applied during the entire time that was meant to be, that is, from the time the goods are delivered to the carrier until they are discharged from the ship. That's also known as the tackle-to-tackle time period. And just so I understand your argument, Starrag knew that at least for that time period, unless they did pay a higher shipping cost, that the limit of liability for that period of time was $500 per item. Is that correct? Well, there is no evidence in the record of any knowledge on the part of Starrag of the opportunity. It's what's called the spare opportunity doctrine where the carrier is supposed to give the shipper an opportunity to declare the value for the cargo in exchange for a higher rate. The only evidence in the record is from the waybill, the front part that has the option for declaration of the value. However, there is no evidence that the carrier indeed gave Starrag option of rate, a different scale of rate commensurate with the value of the cargo or an additional freight. Hold on a second. You have a question. I was trying to ask you, we're trying to figure what we've got left on the table. So you're not contending, are you disputing that there's a valid Himalaya clause in this case? Well, the Himalaya clause, again, is contained in the Combined Transport Bill of Lading, which is the long-form bill of lading. We submit... Can you, I said yes or no on that? You know, we're trying to figure what's on the table. No, we do not contend it's a valid incorporation. Okay, and then you're also saying that tackle to tackle, that you're saying you didn't have fair notice? We do not have fair notice of beyond tackle. We knew about COXA applying and the limitation applying between tackle. Okay. That we can see. So it's beyond, so then if you go beyond that, are you contending that Marist may not use Section 1307 to extend the package limitation beyond tackle to tackle? They may, but they must give notice to the shipper, and that notice must be expressed in the way bill. That notice was not expressed in the way bill, and therefore, they don't get to enforce that option of COXA, because we go back into the situation that was presented in the Second Circuit in Encyclopedia Britannica and also the Ninth Circuit with ComSort, where the shipper does not know what part of the statute has been modified. And if the shipper is going to be required to know that the statute may apply in a different way than what was meant to be, then the shipper must get notice, and that did not happen here. Okay, can I back you up again then? Because my question was whether or not your client knew from the short-form way bill that insofar as COXA did apply, they had a $500 limit of liability. That is clear from the face of the way bill, is it not? That is correct. Okay, so what is your contention that they should have been given more specific notice of, that COXA was extended beyond the point where it was offloaded from the ship? Correct, because the damage in this particular case, Your Honor, occurred at the time when the cargo had already passed the ship's rail. The cargo had already been delivered to the container yard. So, therefore, the damage occurred at a time where COXA had ceased to apply. And, therefore, if COXA ceased to apply, the $500 package limitation does not apply. So what weight should we give to the notion that the shipper knew that it had only $500 limit of liability or had a $500 limit of liability tackle to tackle, and this short interval that we're talking about, what is there to suggest that they would have opted for higher coverage for that short period of time? Well, again, back to your initial question. There was no evidence that the shipper would have, if given the opportunity, opted for a higher rate. The carrier has the burden to show that the shipper had that opportunity and declined to take advantage of it. The carrier did not show that at the district court level. And, at the very least, this case should be remanded to the district court level if the finding is going to be that COXA ceases to apply at the time of tackle, then we should be back at the district court to determine what notice and what opportunity was given to the shipper to declare the higher value. That is not in the record, Your Honor, because this matter was decided on summary judgment on the issue of whether COXA applied beyond tackle, that is, at the time when this shipment was damaged. And if you have any other questions, if that answers your question, I would like to continue with. Judge Callahan has a question. I think Judge Gibson has a question as well. Well, that just doesn't seem logical from the standpoint, if you're saying you had fair notice that there was a 500-package limitation from tackle to tackle and you didn't take advantage of that, and it also appears, has Starig shipped these machines to the United States before? Your Honor, I'm sorry, I do not have that information. I do not know whether this is the first, second, or last shipment. You know, what Judge Fischer was saying, then why would they have selected, you know, they didn't choose to ensure tackle to tackle, which is a longer period of time than just from when it goes over to the, you know, when it's slightly removed over to COX, that, you know, you're claiming that then you would have done something different? That just, that doesn't follow. Well, we have a different defendant, Your Honor. We have the ocean carrier and we have the terminal. So, is the terminal going to benefit from a provision that ceased to exist and ceased to apply? We think that that's inconsistent because the message then that will be sent is, well, here terminal, go ahead and mishandle the cargo. It doesn't matter what you do with it because you're still going to be entitled to limit your liability, even though you don't have a contract with the shipper. At least between MERS and the shipper, there was a contract in place, and that is reflected in the way bill, not the ASTBL, the Combined Transfer Bill of Lading, because that document was never issued. The only shipping document issued was the way bill. So, the terminal is taking advantage of a situation where it does not have a contract, and yet it gets to benefit from a provision that has ceased to apply. That's where this case is. It's not a matter of whether the shipper knew and agreed that it will be subject to $500 as a liability. No, it's a situation where the terminal is benefiting unfairly from a provision that does not apply. Judge Gibson? If I had a question a minute ago, it's now escaped me. Okay. Well, there's no question here, though. The damage occurred when the piece of equipment fell off the trailer actually in the delivery point. Correct. Once delivery had already occurred, delivery by the carrier. Bear in mind, the carrier, MERS, had already delivered the containers to the terminal. The bill of lading required the carriage to be from Rotterdam to the container yard. So, actually, delivery had already occurred by MERS, and it was already in the hands of the terminal. So that's where we argue COGSA no longer applies because delivery had occurred, number two, actually, and number one is because the statute provides it ceased to apply upon pass and tackle. Well, I guess then, now that we've focused on your argument, then how do you distinguish your case from Morisaki, Vision Air Flight Services, Furman Tool and Braces, and I guess it's Akiyana, and all the other Ninth Circuit authorities that find the package limitation applies to damage occurring outside the tackle-to-tackle area? It does, and it may. That provision is perfectly enforceable, provided the shipper is given notice. Because, remember, this is an exceptional circumstance. This is an exception to the rule. The rule is COGSA applies from tackle-to-tackle. The exception is COGSA may apply beyond tackle. If you're going to enforce an exception, you must give notice to the shipper. That did not happen here. Starek never agreed to extend COGSA beyond tackle. This is the perfect situation as presented in Encyclopedia Britannica and in ComSource. Those two other cases from the Ninth Circuit are distinguishable because, in those cases, a bill of lading was actually issued, not in this case. The way bill is not a bill of lading. It's just simply a document of receipt of the cargo, and it does not serve the functions of a bill of lading. The bill of lading in those cases clearly stated, like it does the CTBL here, that the COGSA may extend beyond tackle. And, therefore, the package does apply beyond tackle in those cases, not here. The only incorporation of extending COGSA beyond tackle is through a document that was never issued. It was simply mentioned by reference in the way bill. And then by that reference, it contradicts another reference in the same document, the reference to COGSA. So what we submit is that those cases are perfectly fine the way they are. They're not going to create any kind of inconsistencies within the circuit. Okay, you may want to save the balance of your time. You have a little over four minutes. Because those cases, I'm sorry, I have four minutes for a total? You have four minutes left. Okay. I'm going to stop here now and then take them for rebuttal. All right. Thank you. Good morning, Your Honors. Good morning. The appellant. You can't focus the argument. So it seems that you need to talk about Encyclopedia Britannica, Comcorse, and Peronotus. That is fine, Your Honor. I would like to start, though, by saying that even if everything that appellant says is true, Harder Act would apply, and Harder Act does allow limitation of liability as well. So all this is for naught. But where was the limitation of liability communicated to the shipper? The limitation for liability was communicated to the shipper in the CTBL. You're just saying this doesn't make any difference? Correct. So why is Meris fighting so hard to read it in by implication into a two-step contract? Because the limitation is contained in the CTBL, which is the second. I saw that argument. I was having a little trouble understanding the logic of it. You're saying, well, this is what a belt and suspenders provision then, because regardless of what the waybill says, there's an automatic coverage of the terminal entity under the Harder Act. The Harder Act would apply both to the carrier and to the terminal. And then going on to the question of notice, the cases upon which appellant relies all depend or all specify that notice is only required when the terms of the bill of lading that are being incorporated by reference vary from the actual statute. Here they don't vary from the actual statute. They complement or they track the language from the actual statute. 1307 specifically allows us to extend the provisions of COGSA beyond that. It does, but there's still a concept that the shipper has to know what they're buying into. And all they get is the record, at least as I understand it in this case, the shipper got was a short-form waybill that says, and by the way, if you want to see our lengthy fine print document, you can come down to our offices, or I don't know how else you get it. It's not exactly what one, certainly in the normal consumer friendly environment. In fact, I'm not even sure under the Warsaw Convention when limitations are imposed on limits that they can get away with that sort of very quiet incorporation by reference. And you're suggesting that as long as it doesn't conflict, then it's just fine. That's what the cases upon which appellant relies say. Well, maybe they say that. And additionally, Your Honor, the short-form bill of lading does give notice that there would be terms relating to pre- and post-carriage that are incorporated into the short-form bill of lading. How does it say that? The language is including those relating to pre-carriage and on-carriage. Yes. So they are on notice that there are terms that are being incorporated into the bill of lading, that short-form bill of lading, that affect not just what's happening on the ship but what happens before it gets on the ship and after it's taken off of the ship. Well, it doesn't exactly tie it into COGSA. What it says, the contract evidenced by this waybill is subject to exceptions, limitations, conditions, and liberties including those relating to pre-carriage and on-carriage set out in the long bill of lading. Then it goes on and talks about where COGSA applies, and then at the end it gives them notice of the $500 limitation. This is a copy of the long form can be inspected or be supplied on request at any offices. Which gets us back, Your Honor, to the fact that this $500 limitation is enforceable under the Harder Act. So even if COGSA is not properly incorporated, which I strongly believe that it is, it's still available for limitation. And Plaintiff's only argument against that is to say, well, it's really a de facto exculpation of liability based on the fact that it's such a discrepancy between the $600,000 in alleged damages, which there's no evidence before this Court regarding that $600,000 figure. Okay. Explain a little more why the Harder Act, under the language you said that that's why. Where on the way bill, why in the way bill does that then basically, by implication, invoke the Harder Act? Just to the extent that where the COGSA no longer applies, the Harder Act takes over. In other words, that is the overlap or where one ends, the other begins. And so under the Harder Act, it is permitted to limit liability. And I cited a couple of cases on that point. I'm still confused, though. You say this is just a belt and suspenders proviso then. Well, actually, because the Harder Act can be limited to the actual terminal or the port area. So if this went on to, for instance, Nebraska, then we'd want COGSA to cover the entire shipment. If you're saying that COGSA wasn't properly incorporated in this instance, that's fine, because Harder Act still applies, at least in the port, and so that would allow a limitation. Well, does your short form give notice that it's extending COGSA beyond tackle to tackle? Or do we have to do the incorporation? It has to do the incorporation for COGSA, but it does give notice that terms affecting pre- and post-carriage will be – that's correct. And has your short form ever been judicially approved? I believe – I don't have any sites on that. How do Norfolk Southern Railway and Kirby case – how do those affect this particular case? Just to the extent that the Supreme Court has specifically specified that combined transport bills of lading or combined transport modes of operation can include COGSA from door to door. So all the way across the country, in the middle of Nebraska, you can still have COGSA being applied. In terms of just from a policy standpoint, I mean, there seems to be – obviously that the opponent is arguing even though that, you know, for some reason that we're supposed to believe, even though they didn't choose to list the – on the tackle to tackle, that they somehow would have listed in the area from when it – from tackle over to where it fell off the – you know, was damaged. In terms of – you know, there aren't a lot of cases out there that deal with this particular issue. You know, what is the usual practice in the shipping trade? To insure your cargo from door to door. Or not. Or not. Or to take that chance. And then if you take that chance, then there's a question of whether or not you would get – your liability will be limited. Well, you – it's nice to talk about Nebraska, but in this particular case, Nebraska is not in the picture at all, is it? Or whatever the ultimate destination is. What we're talking about is the difference between liability of when it comes off the ship, tackle to tackle, as they say, or the point at which it's delivered to some other – to some other carrier, which I trust is involved here. And that other carrier would take it somewhere. We don't know where, but that's where all the hell is, isn't it? Correct, John. Just in the extent – in this case, for instance, the cargo would come to a rest at the terminal, and then the ultimate consignee, in this case, Starrag, would come and pick it up. They'd hire their own trucker and pick it up from the terminal. That's when delivery would occur, is when there's a handoff between one carrier and the next. And your position is that delivery hadn't occurred? That is correct. And their position is that it has? Correct. And I believe, Your Honors, that they submit no authority that really provides that delivery occurs upon discharge. Most of the authorities, including the Fifth Circuit – well, anyway, delivery hasn't always been – it's not the clearest of terms, but in this case, based on the terms of the bill of lading and the usage of the bill of lading, delivery requires an affirmative act on behalf of the consignee. Okay. And your position on the Harder Act is not exculpation because the $500 satisfies that there is some liability? Exactly, Your Honors. Same as under COGSI. COGSI has a prohibition against exculpation of liability. So does the Harder Act. A $500 works under both – a $500 limitation works under both provisions. I cited cases on that. Okay. Apparently there are no further questions. Thank you. We'll hear counsel in rebuttal. You have about four minutes. Thank you. I'd like to address the issue on the Harder Act. The Harder Act applies as a matter of law because this is the shipment to from the United States and the particular damage occurred after the ocean part of the carriage, so COGSI ceased to apply. And Congress precisely intended for both statutes to coexist. The Harder Act does allow for limitations. The Harder Act frowns on exculpations of liability.  The carrier will be caught free if its only liability is $1,500 when the actual damage is nearly $600,000. So I think what we're arguing is that this is tantamount to an exculpation of liability. Do you have any case law authority for that? And how do you distinguish our cases which have said that, in effect, so long as there's some liability, it's not exculpation? Unfortunately, I don't have any case law on that at this point. I'll be glad to submit supplementary briefs if the audience would like. I don't have any right now at this time. But the point that I want to make is the Harder Act does not have a limitation provision whatsoever in the statute. So, again, if the carrier is going to limit its liability, it must inform so to the shipper, and it must give specific notice. And then, not only that, it must get the consent from the shipper. That did not happen here. There's no evidence in the record that Starrett ever agreed to $500 while Harder Act applied, while the cargo was on land, while the cargo was in the hands of the terminal. There is no evidence whatsoever. I submit the carrier has that burden. However, they have to show that there was an agreement by the shipper to not only send consent, but also impose a limitation provision of $500 while the Harder Act applied, when Harder does not have a $500 limitation. Okay. But you said that the Harder Act applies as a matter of law. Correct. Okay. So, in that posture, then the question you're posing is whether the waybill alerted Starrett to the fact that the terminal operator would be able to invoke the Harder Act and the Harder Act's proviso that they could set some kind of liability limit. Is that correct? Correct. And there's nothing in the waybill to alert the fact that the terminal is going to limit its liability to $500. I would like to address Judge Gibson's concern about the Kirby case. My understanding of the Kirby case, dealing with the Norfolk Southern Railway Company, was that that involved a through bill of lading. That is not the situation here. A through bill of lading is one that covers multiple cities or multiple points of delivery and exchange by multiple modes of transportation. That is not the case here. So I think that case is clearly distinguishable from ours. All right. Thank you very much. We appreciate the argument. And the case just argued is submitted.
judges: Gibson , Fisher, Callahan